1  Andrew R. Perrong
2  1657 The Fairway #131
3  Jenkintown, PA 19046
4  *Plaintiff Pro-Se*
5  Facsimile: 888-329-0305
6  E-mail: andyperrong@gmail.com
7  Telephone: 215-791-6957
8
9  Plaintiff *Pro-Se*
10
11
12            **IN THE UNITED STATES DISTRICT COURT**
13              **FOR THE DISTRICT OF ARIZONA**
14

Andrew R. Perrong, an individual

      Plaintiff

v.

Home Team Investors, LLC,
an Arizona corporation;

Brad Mortensen, an individual;

and Rial Clark Richardson, an individual

      Defendants.

Case No.  CV-22-1169-PHX-DJH

JURY TRIAL DEMANDED

PLAINTIFF'S COMPLAINT

15
16                   **PLAINTIFF'S COMPLAINT**
17
18                    **Preliminary Statement**

19        1.      Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the

20  Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in

21  response to widespread public outrage about the proliferation of intrusive, nuisance calling

22  practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

23

2.     Plaintiff alleges that Home Team Investors LLC, and its principal and agent, Brad Mortensen and Rial Clark Richardson, commissioned a series of automated illegal telemarketing "robocalls" to originate new customers by sending calls and text messages to telephone numbers listed on the National Do Not Call Registry and for which the called party is charged for the calls and text messages, like Mr. Perrong's number, which is prohibited by the TCPA. The calls and text messages were made either directly by Mortensen, Richardson, or their agents for their real estate company, Home Team Investors, LLC, and at the supervision, direction, and control of Mortensen and Richardson.

3.     The Plaintiff never consented to receive such calls and text messages, which were placed to him for telemarketing purposes.

## **Parties**

4.     Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of the Eastern District of Pennsylvania.

5.     Defendant Home Team Investors, LLC is an Arizona LLC that has its principal place of business located at 3317 S. Higley Rd., Ste. 114-507, GILBERT, AZ 85297, which lies within this District.

6.     Defendant Brad Mortensen is domiciled and resides at 2460 E. Oxford Ct., Gilbert, AZ 85295, which lies within this District.

7.     Defendant Rial Clark Richardson is domiciled and resides at 2389 Maravilla Way, Oceanside, CA 92056, which lies within the Southern District of California. However, upon information and belief, Richardson regularly transacts business within this District, including by working for Defendant Home Team within this District.

**Jurisdiction & Venue**

8.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

9.     This Court has supplemental jurisdiction over the state law claims as they are part of the same underlying case or controversy as the underlying federal claims, and the facts giving rise thereto are part of the same nucleus of operative facts, the illegal telemarketing conduct complained of herein, per 28 U.S.C. § 1367(a).

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this litigation occurred in this District, as the calls and text messages to Plaintiff were drafted, sent, or ordered to be sent, from this District.

**The Telephone Consumer Protection Act**

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits all Automated Calls To Protected Numbers

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded telephone calls onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient.

15.     Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

17.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013).

18.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes telemarketing messages. *See* FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

The National Do Not Call Registry

19.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

20.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

21.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

22.     Defendants are real estate investors, commonly referred to as "house flippers," who buy and sell properties throughout the United States.

1        23.    Defendants use telemarketing to solicit potential customers and/or victims to

2    sell their homes to them, to purchase homes from them, or to otherwise utilize their "house

3    flipping" services.

4        24.    Defendants are not registered as telemarketers with the Attorney General of

5    Pennsylvania.

6        25.    Defendants are not registered as telemarketers with the Secretary of State of

7    Arizona.

8        26.    One of the strategies used by Defendants involves the use of automated calls

9    and text messages.

10        27.    Defendants send out these call and message blasts *en masse* to telephone

11    numbers throughout the United States, hoping they reach someone interested in buying or

12    selling their property.

13    The Calls and Text Messages to Mr. Perrong

14

15        28.    Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

16        29.    Plaintiff's telephone number (the "Number"), 215-947-XXXX, is on the

17    National Do Not Call Registry and had been continuously for at least 31 days prior to the

18    calls and text messages.

19        30.    Plaintiff's Number had also been on the Pennsylvania Do Not Call registry

20    continuously for at least 31 days prior to the calls and text messages.

21        31.    Despite this, the Defendants placed at least three telemarketing text messages

22    and one telemarketing call to Plaintiff's Number on February 12, March 12, April 26, and

23    May 23, 2022.

32.     The Number is assigned to a Voice over Internet Protocol (VoIP) telephone service, which allows for voice calls and text messages to be placed over a broadband Internet connection.

33.     That Number, which is assigned to a VoIP telephone service, is charged for each call and text message it receives.

34.     The VoIP telephone service for the Number is Anveo.

35.     The service charges a ring charge of $0.005 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

36.     The service also charges a per-minute charge of $0.004 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

37.     The service charges a charge of $0.01 for each text message sent to the Number.

38.     The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any calls or text messages sent to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

39.     On February 12, 2022 at 12:43 PM, the Plaintiff received the following text message from the caller ID 602-536-6819: Hey StefaniaFerrong, this is Clark again with Home Team Investors. I have your file here and we are looking to purchase couple of more properties in next 2 months in Huntingdon Valley area and would love to talk to you about the offer we have for 2007 Jason Dr. Let me know when we can jump on a call.

40.     On March 12, 2022 at 12:43 PM, the Plaintiff received the following text message from the caller ID 602-536-6819: Hi StefaniaFerrong, How's it going? this is Clark again with Home Team Investors . Do you still want to sell your property: 2007 Jason Dr? I am still very interested in discussing our offer and close as soon as you would like. Just need 5 mins of your time to go through the offer. Thanks! If its easier send me the best email for you and I can send it over.

41.     On April 26, 2022 at 12:43 PM, the Plaintiff received the following text message from the caller ID 602-536-6819: Hi StefaniaFerrong! Clark with Home Team Investors here. Hope you are doing well, we are looking to buy 2 more properties this month in Huntingdon Valley area and I would LOVE to speak with you about an offer. Please call or text at this number. Thanks!

42.     On May 23, 2022 at 2:18 PM, Plaintiff received a call from the 602-536-6819 number.

43.     When Plaintiff answered the call, there was a delay and silence before the caller on the other side came onto the line. After the Plaintiff said "hello," there was a moment of silence followed by an audible computerized noise before a human being came on the line.

44.     The caller on that call, "Daniella," who confirmed she was calling from "Home Team Investors," began to pitch the Plaintiff on Defendants' real estate services and asked if "Stefania" was interested in selling any property with Defendant.

45.     Shortly thereafter, the call dropped.

8

46.     The telephone service provider for the 602-536-6819 telephone number is Plivo.

47.     Prior to filing suit, Plaintiff contacted the Defendants in an attempt to obtain a copy of their do not call policy and request to be placed on their do not call list. Despite this, Defendants attempted to call and text the Plaintiff again and attempt to sell the Defendants' services again before arguing with Plaintiff over the telephone.

48.     Plaintiff, to this day, has not received a copy of Defendants' do not call policy nor received confirmation that he was placed on Defendants' do not call list.

49.     The calls and text messages were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

50.     The fact that the three text messages all came at exactly 12:43 PM supports the inference that they were sent using automated means, such as through a sequential scheduling software, since it would be nearly impossible, as well as illogical, for a human being to manually send the text messages with such temporal precision.

51.     The system(s) Defendants used to place the calls to Plaintiff is/are an ATDS when they make calls because it would be also illogical to dial a number manually, have the Plaintiff answer it, and only then connect it to a human being.

52.     In fact, the fact that the same caller ID appeared on both the calls and text message supports the inference that the Defendants used the same automated system and used the same automated functionality to send both text messages and telephone calls.

53.     Furthermore, audible pauses and clicks are hallmark indicia of ATDS systems. It supports the inference that Defendants used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook*, 141 S. Ct. at 1171 n.7.

54.     The calls and messages were placed from a number serviced by the company Plivo. Plivo's website boasts the ability to send text messages "programmatically." *See SMS API Platform*, PLIVO, https://www.plivo.com/sms/ [https://archive.ph/GdWWX].

55.     Indeed, Plivo's documentation outlines in detail the computer programming code necessary to make automated calls and send automated text messages using a "messaging powerpack," which can pool thousands of numbers together in an automated marketing campaign. *See Powerpack*, PLIVO DOCS, https://www.plivo.com/docs/sms/powerpack/ [https://archive.ph/r3TFe].

56.     Other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties and the random nature of the automation, are all indicia of the random or sequential nature of the dialing device that gives rise to the inference at the pleadings stage that an ATDS was used. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

57.     Plaintiff is ignorant of the exact process by which the system(s) used by the Defendants operate other than drawing the reasonable inference and making the allegation that it stores or produces telephone numbers sequentially or possibly randomly based on the facts ascertainable from the calls and text messages he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more

relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

58.     The communications received by Plaintiff demonstrate that they were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they sought to have him sign up for real estate services. The calls and text messages therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

59.     Defendants made the automated calls and text messages. They either physically programmed the automatic dialer to dial them, orchestrated their sending, including by naming themselves therein, or instructed others to do the same.

60.     The Plaintiff never provided his consent or requested these calls or text messages.

61.     Defendants ignored a request not to be called and indications that the Plaintiff was not interested.

62.     Based on this fact, it is evident that Defendants do not maintain Do Not Call policies and procedures as required by law, nor do they maintain an internal Do Not Call list.

63.     Plaintiff was harmed by these calls and text messages. He was temporarily deprived of legitimate use of his phone because his phone line was tied up during the automated calls and his privacy was improperly invaded. The text messages wasted storage space, electricity, and network bandwidth. The Plaintiff was charged for the calls. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

11

1    **Legal Claims**

2

3    **Count One:**
4    **Violation of the TCPA's Prohibition Against Automated Calling**
5    **With an Automatic Telephone Dialing System (ATDS)**

6

7    64.    Plaintiff incorporates the allegations from all previous paragraphs as if fully

8    set forth herein.

9    65.    The foregoing acts and omissions of Defendants and/or their affiliates, agents,

10   and/or other persons or entities acting on Defendants' behalf constitute numerous and

11   multiple violations of the TCPA, 47 U.S.C. § 227, by making calls or sending text messages,

12   except for emergency purposes, to the telephone number of Plaintiff using an ATDS.

13   66.    As a result of Defendants' and/or their affiliates, agents, and/or other persons

14   or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff

15   is entitled to an award of $500 in damages for each and every call or text message made to

16   his telephone number for which he is charged for the call and text message using an ATDS in

17   violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

18   67.    Plaintiff is also entitled to and does seek injunctive relief prohibiting

19   Defendants and/or their affiliates, agents, and/or other persons or entities acting on

20   Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending

21   text messages, except for emergency purposes, to any number using an ATDS in the future.

22   68.    The Defendants' violations were wilful and/or knowing.

23

12

**Count Two:**
**Violation of the Pennsylvania Telemarketer Registration Act**
**73 Pa. Cons. Stat. § 2241**

69.     By placing at least four telemarketing calls to the Plaintiff without registering

as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa.

Cons. Stat. § 2243. Moreover, by failing to identify themselves in the messages, Defendants,

jointly and severally, violated 73 Pa. Cons. Stat. § 2245.1.

70.     This constitutes four violations of the Pennsylvania Unfair Trade Practices

and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

71.     The foregoing acts and omissions of Defendants and/or their affiliates, agents,

and/or other persons or entities acting on Defendants' behalf constitute numerous and

multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons.

Stat. § 2241, including by making calls or sending text messages to Plaintiff's number, on the

Pennsylvania Do-Not-Call registry, without registration.

72.     As a result of Defendants' and/or their affiliates, agents, and/or other persons

or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff

is entitled to an award of $300 in damages for each and every call or text message made to

his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. §

2246(a).

73.     Plaintiff is also entitled to and does seek injunctive relief prohibiting

Defendants and/or their affiliates, agents, and/or other persons or entities acting on their

behalf from violating the PTRA in the future.

13

**Count Three:**

**Violation of the TCPA's Implementing Regulations**
**Codified at 47 C.F.R. § 64.1200**

74.     By placing at least four telemarketing calls/text messages to the Plaintiff,

whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy,

and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and

severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified

in 47 C.F.R. § 64.1200(c) and (d).

75.     This amounts to twelve violations since Defendants committed three

violations per call. The first violation is calling a number on the national Do-Not-Call

registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without

having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by

calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R.

§ 64.1200(d)(6).

76.     The foregoing acts and omissions of Defendants and/or their affiliates, agents,

and/or other persons or entities acting on Defendants' behalf constitute at least twelve

violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*,

refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr.

Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

77.     As a result of Defendants' and/or their affiliates, agents, and/or other persons

or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is

entitled to an award of $500 in damages for each and every violation for each and every call

and text message made to his telephone number in violation of the TCPA's implementing

regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

78.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls or sending text messages in violation of any of the TCPA's implementing regulations in the future.

79.     The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

### Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A.     Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B.     Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

C.     Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

E.     Such other relief as the Court deems just and proper.

1

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

2

3                                                    DATED this 11th day of July, 2022

4

5
6                                                           Andrew R. Perrong
7                                                           *Plaintiff Pro-Se*
8
9
10
11                                                     1657 The Fairway #131
12                                                     Jenkintown, PA 19046
13                                                     Phone: 215-791-6957
14                                                     Facsimile: 888-329-0305
15                                                     andyperrong@gmail.com
16